**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**TURHAN JAVON DUCREE,**
    **Plaintiff,**

**vs.**                                       **Case No.: 3:07cv452/MCR/MD**

**THE VILLAS OF GULF BREEZE, et al.,**
    **Defendants.**

_____

**REPORT AND RECOMMENDATION**

**This case filed pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII")[1] is before the court upon defendants' motion for summary judgment filed on July 9, 2008. (Docs. 18).  Defendants also filed a statement of undisputed material facts and supporting summary judgment materials.  (Doc. 19).  On July 18, 2008 the court entered an order informing the parties that the motion for summary judgment would be taken under advisement on July 28, 2008.  (Doc. 22).  The order further advised the parties of the importance and ramifications of Rule 56 summary judgment consideration, and directed the parties to file and serve, prior to the advisement date, affidavits and any other documents or materials authorized to be filed under Federal Rule of Civil Procedure 56 and Northern District of Florida Local Rule 56.1(A).  (_Id._).  Plaintiff has not responded in opposition to the motion.  Upon review of the evidence in the summary judgment record, it is the opinion of the undersigned that defendants' motion for summary judgment should be granted.**

---

[1] **42 U.S.C. §§ 2000e to 2000e-17.**

## BACKGROUND

Plaintiff, a former employee of defendant The Villas at Gulf Breeze, Inc. ("The Villas"), has filed a complaint pursuant to Title VII claiming race discrimination and retaliation occurring on or about July 26, 2006.  (Doc. 1, p. 3).  Specifically, plaintiff asserts he was terminated from his employment on account of his race and physical appearance (gold teeth and tattoos).  In support of this contention, plaintiff alleges that he was told by Belie Williams,[2] an employee with The Villas, that he (Williams) was going to have plaintiff arrested "because he felt like [plaintiff] was selling drugs to residents of the facility," and that Williams further stated plaintiff "just looked like the type to sell drugs."  (*Id.*, p. 4).  According to plaintiff, when he inquired of Mr. Williams why he thought plaintiff looked like the type to sell drugs, Mr. Williams "made a statement about [plaintiff's] gold teeth and tatoos [sic] and about [plaintiff] being a young black man."  (*Id.*, p. 5).  As relief, plaintiff seeks money damages, injunctive relief, and costs.  (*Id.*, p. 6).

Defendants have submitted a motion for summary judgment, a statement of the material facts as to which they contend there are no genuine issues to be tried, and various summary judgment materials.  (Docs. 18, 19).  According to defendants, these materials establish that there are no genuine issues of material fact to be tried and that they are entitled to judgment as a matter of law on plaintiff's race discrimination claim because:  (1) plaintiff cannot establish a *prima facie* case of race discrimination; (2) plaintiff cannot show that their legitimate reasons for their employment decisions were a pretext for discrimination; (3) after-acquired evidence of plaintiff's falsifying his application for employment would have resulted in his termination had it been discovered; and (4) plaintiff failed to properly mitigate his damages. (Docs. 19-21).  Defendants further argue that they are entitled to judgment as a matter of law on plaintiff's retaliation claim because:  (1) plaintiff has failed to

---

[2]Defendants point out that plaintiff incorrectly referred to Mr. Williams as "Billy," instead of "Belie."

establish a *prima facie* case of retaliation; (2) plaintiff cannot show that their legitimate reasons for their employment decisions were a pretext for discrimination; and (3) plaintiff failed to mitigate his damages. (*Id.*).

Plaintiff has presented no responsive argument, no Rule 56 materials (other than his verified complaint which is construed as an opposing affidavit) and no statement of disputed material facts.

## LEGAL ANALYSIS

### Summary Judgment Standard

In order to prevail on their motion for summary judgment, the defendants must show that plaintiff has no evidence to support his case or present affirmative evidence that plaintiff will be unable to prove his case at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If the defendants successfully negate an essential element of plaintiff's case, the burden shifts to plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.,* 477 U.S. at 248, 106 S.Ct. at 2510. Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and a "scintilla" of evidence or conclusory allegations is insufficient. *Celotex Corp.*, 477 U. S. at 324 (quoting FED.R.CIV.P. 56(e)). Plaintiff must either point to evidence in the record or present additional

Case 3:07-cv-00452-MCR-MD   Document 23   Filed 08/19/08   Page 4 of 15

Page 4 of 15

evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Celotex Corp., supra*; *Owen v. Wille*, 117 F.3d 1235, 1236 (11th Cir. 1997)("Rule 56(e) . . . requires the nonmoving party to go beyond the pleading and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'") (quoting *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(c), (e))); *Hammer v. Slater*, 20 F.3d 1137 (11th Cir. 1994).

Evidence presented by plaintiff in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to plaintiff. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); *Jones v. Cannon*, 174 F.3d 1271, 1282 (11th Cir. 1999). Nonetheless, the non-moving party still bears the burden of coming forward with sufficient evidence of every element that he must prove. *Celotex Corp.*, 477 U.S. 317 (1986). A motion for summary judgment should be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552.

**Legal Standard for Race Discrimination Claims**

Title VII makes it unlawful for an employer to discharge or otherwise discriminate against an individual with respect to that person's compensation, terms, conditions, or privileges of employment, or to otherwise adversely affect that person's status as an employee, because of that person's race. *See* 42 U.S.C. § 2000e-2(a). To sustain a claim for discrimination under Title VII, the plaintiff must prove an intentional discriminatory motive by presenting either direct or circumstantial evidence of discriminatory animus. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07, 113 S.Ct. 2742, 2746-47, 125 L.Ed.2d 407 (1993).

"Direct evidence . . . is evidence that, 'if believed, proves [the] existence of [a]

fact in issue without inference or presumption.'" *Schoenfeld v. Babbit*, 168 F.3d 1257, 1266 (11th Cir. 1999); *see also Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) (stating that evidence which only suggests discrimination or is subject to more than one interpretation is not direct evidence.). Direct evidence consists of "only the most blatant remarks, whose intent could be nothing other than to discriminate." *See Schoenfeld*, 168 F.3d at 1266.

In the absence of direct evidence of discrimination, the plaintiff may present circumstantial evidence and invoke the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See St. Mary's Honor Ctr.*, 509 U.S. at 506-07, 113 S.Ct. at 2746-47. Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a *prima facie* case of intentional discrimination, which requires: (1) that she is a member of a protected class, (2) that she was qualified for the position she held, (3) that she was discharged or subjected to an adverse employment action, and (4) that the employer treated similarly situated employees outside the protected class more favorably. *See St. Mary's*, 509 U.S., at 506, 113 S.Ct., at 2746-47; *Burke-Fowler v. Orange County*, 447 F.3d 1319, 1323 (11th Cir. 2006).

If a plaintiff establishes this *prima facie* case, a presumption of discrimination is created, and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. *Id.*, 509 U.S., at 506-07, 113 S.Ct., at 2746-47. "'[T]he defendant must clearly set forth, through the introduction of admissible evidence,'" reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action. *Id.*, 509 U.S. at 507, 113 S.Ct. at 2747 (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254-55, and n. 8, 101 S.Ct. 1089, 1094-95, and n. 8, 67 L.Ed.2d 207 (1981)).[3]

---

[3] The burden on defendant to proffer a non-discriminatory reason for its action is a burden of production, and is satisfied regardless of the persuasive effect of the proffered reason. *See St. Mary's*, 509 U.S., at 506-07, 113 S.Ct. 2742.

If the defendant satisfies this burden, the presumption disappears and plaintiff must prove that the proffered reasons were not the true reasons for the employment decision. *St. Mary's*, 509 U.S. at 507-08, 113 S.Ct. at 2747-48. *See also Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000). A plaintiff can avoid summary judgment if the evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer, and (2) creates a reasonable inference that race was a determinative factor in the actions of which plaintiff complains. *See Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 370 (5th Cir. 1997).

Despite the burden-shifting framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S., at 253, 101 S.Ct., at 1093. She must establish a *prima facie* case and rebut any legitimate non-discriminatory explanation proffered by the employer. *St. Mary's*, 509 U.S., at 507, 113 S.Ct., at 2747.

**Legal Standard for Retaliation Claims**

Title VII makes it unlawful for an employer to retaliate against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [thereunder]." 42 U.S.C. § 2000e-3(a). "A *prima facie* case of retaliation under Title VII requires the plaintiff to show that: (1) [he] engaged in an activity protected under Title VII; (2) [he] suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)).

Once a plaintiff has established a *prima facie* case, the employer has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged

employment action.  *Pennington*, 261 F.3d at 1266.  If that burden is met, the plaintiff bears the ultimate burden of proving, by a preponderance of the evidence, that the reason provided by the employer is a pretext for prohibited, retaliatory conduct.  *Id*.

**Undisputed Material Facts**

The following facts are set forth in defendants' statement of material facts.  The statement was submitted with defendants' motion for summary judgment as required by Local Rule 56.1(A).[4]  These facts are deemed admitted because plaintiff has not submitted his own statement controverting said facts.  *Id.*; *see also Reese v. Herbert,* 527 F.3d 1253, 1268 (11th Cir. 2008) (upholding validity of identical local rule, and holding that proper course for district court in applying that rule is "to disregard or ignore evidence relied on by the [non-moving party] – but not cited in its response to the movant's statement of undisputed facts – that yields facts contrary to those listed in the movant's statement.").  Also included in this recitation of the facts are those factual allegations of plaintiff's verified complaint that comply with the requirements for affidavits set forth in Rule 56 and that are not contrary to those listed in defendants' statement.  *Reese, supra*.

The Villas at Gulf Breeze, Inc., is a Florida corporation doing business in Gulf Breeze, Florida, as an assisted living facility.  Total Leasing, Inc., is a Florida corporation doing business in Pensacola, Florida.  Total Leasing provides administrative functions to its clients, including the administration of payroll processing, benefits, workers' compensation administration and human resources services.

---

[4] Rule 56.1 provides: "Any motion for summary judgment filed pursuant to Fed.R.Civ.P. 56 . . . shall be accompanied by a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried."  N.D. Fla. Loc. R. 56.1(A).  The rule further requires: "The party opposing a motion for summary judgment shall, in addition to other papers or matters permitted by the rules, file and serve a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried. . . .  All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be filed and served by the opposing party." *Id.*

**Darlene Earl is employed in the Human Resources Department for The Villas and is responsible for maintaining the employee personnel files including applications for employment, signed employment policy forms, and disciplinary action forms. (Doc. 19, Ex. 15, Earl Aff.).[5] Plaintiff completed an application for employment at The Villas on April 18, 2006. (Ex. 2). On the application, in response to the question asking "Have you ever been convicted of a crime," plaintiff checked "yes." In the explanation "For what," he listed "violation of probation." No other convictions were listed by plaintiff. (*Id.*). Plaintiff was hired to work at The Villas as a Dietary Aide on April 21, 2006. (Ex. 1, Ducree Dep., p. 16).**

**The Villas has an employee Attendance and Tardiness Policy which specifically provides: "Tardiness will not be tolerated. Employees are expected to be prompt and on time for their shift. If you receive three write-ups, you will be automatically terminated." (Ex. 3). The Attendance and Tardiness Policy also states: "NO CALL/NO SHOW = NO JOB." (*Id.*). Plaintiff signed the Attendance and Tardiness Policy form for The Villas on April 21, 2006. (*Id.*).**

**Plaintiff was written up by Rose Creighton, the Administrator at The Villas, on July 6, 2006 for arriving late to work. Plaintiff was scheduled to begin work at 6:30 a.m., but did not arrive until 8:20 a.m. (Ex. 4).**

**Plaintiff was written up by Ramon Correa, the Marketing/Assistant Administrator at The Villas and plaintiff's immediate supervisor, on July 7, 2006 for arriving late to work. Plaintiff was scheduled to begin work at 6:30 a.m., but did not arrive until 7:50 a.m. (Ex. 4; Ex. 16, Correa Aff.). Plaintiff was written up by Ramon Correa on July 10, 2006, for arriving late to work. Plaintiff was scheduled to begin work at 6:30 a.m., but did not arrive until 7:25 a.m. (*Id.*). Plaintiff was written up by Ramon Correa on July 21, 2006, for arriving late to work. Plaintiff was scheduled to begin work at 6:30 a.m., but did not arrive until 8:55 a.m. (*Id.*).**

---

[5]**Hereafter, all references to exhibits will be to those attached to Doc. 19, unless otherwise noted.**

**Sometime during his employment at The Villas, plaintiff alleges that he reached an agreement with his first supervisor to come into work at 7:00 a.m. rather than his scheduled 6:30 a.m. time. (Ex. 1: Ducree Dep., pp. 52-53). His employee records show his schedule was temporarily adjusted so he could start at 7:00 a.m. on April 22, 2006 and April 23, 2006. (Ex. 5). Notwithstanding, plaintiff showed up late on April 23, 2006.[6] Plaintiff arrived more than ten (10) minutes late 25 days out of the 34 days he worked. Of those 25 days he was late, 18 days he was more than thirty (30) minutes late. Six days he was more than one (1) hour late and one day he was an hour and fifty-five minutes late. (Ex. 5).**

**On July 28, 2006, plaintiff was not scheduled to work, but was called in because the facility was short-handed. During plaintiff's shift, Stephani Martinez, Assistant Administrator at The Villas, needed to speak with plaintiff about a work-related issue. She saw that he was clocked in, but she could not find him either in the kitchen or on the facility grounds. Plaintiff was absent, but still clocked in, for approximately an hour and a half. (Ex. 12, Martinez Aff.).**

**Plaintiff's employment at The Villas was terminated on or about July 28, 2006. (Ex. 1, Ducree Dep., p. 16; Ex. 9). He was advised that he had violated company policy by leaving the facility grounds during his shift without clocking out. (Ex. 9; Ex. 12, Martinez Aff.; Ex. 13, E. Williams Aff.). It was further noted that plaintiff was being terminated for repeated tardiness. (Ex. 9; Ex. 12, Martinez Aff.; Ex. 13, E. Williams Aff.).**

**Plaintiff has no reason to disagree with the time records of his arrival and leave times at work. (Ex. 1, Ducree Dep., pp. 55-56).**

**Repeatedly reporting late for work is a violation of the company policy, and plaintiff was aware of the tardiness policy. (Ex. 1, Ducree Dep. p. 71).**

**The first time plaintiff mentioned race discrimination was after he was**

---

[6]**Even if plaintiff's start time had been permanently changed to 7:00 a.m., he started work at or after 7:10 a.m. on 22 occasions in the three months he worked for The Villas.**

terminated on July 28, 2006, when he spoke with Belie Williams, the Risk Manager at The Villas. (Ex. 1, Ducree Dep. pp. 75-76, 83; Ex. 14, B. Williams Aff.). Belie Williams did not discuss with plaintiff allegations that plaintiff had offered and/or sold drugs to residents at The Villas. (Ex. 14, B. Williams Aff.). Mr. Williams never commented to plaintiff or to any other person at The Villas about plaintiff's race or physical appearance. Mr. Williams never commented about plaintiff's tattoos or gold teeth. Mr. Williams never told plaintiff that he looked like the type to sell drugs. When plaintiff came to The Villas to pick up his final paycheck, he questioned Mr. Williams as to why he was being terminated and commented to Mr. Williams that is must have been because of his race or tattoos. (*Id.*). Plaintiff conceded in his deposition that it was he, not Mr. Williams, who made reference to plaintiff's gold teeth, tattoos and skin color. (Ex. 1, Ducree Dep. p. 83).

Plaintiff's physical appearance was apparent at the time he was hired and did not change substantially during his employment at The Villas. (Ex. 1, Ducree Dep., p. 45; Ex. 14, B. Williams Aff.). Plaintiff had gold teeth and tattoos at the time he was hired as well as at the time he was terminated.

Plaintiff does not know whether other employees were disciplined for excessive tardiness or absenteeism. (Ex. 1, Ducree Dep., pp. 82-83).

After plaintiff's termination, The Villas learned that plaintiff falsified information on his Application for Employment, specifically his criminal record. A background check of plaintiff's criminal record showed he had the following prior criminal convictions:

    01/22/99 Resisting or Obstructing an Officer without Violence

    11/10/99 Battery

    11/10/99 Violation of Domestic Violence Injunction

    11/24/99 Battery

    12/13/00 Fraudulent Transfer of Property to Pawnbroker

    03/18/02 Battery

    04/24/02 Battery

**10/28/02 Felony Battery**

**08/13/03 Petit Theft**

Plaintiff confirmed the prior criminal convictions. (Ex. 1, Ducree Dep., pp. 8-15). Plaintiff confirmed that he did not list the other convictions on his Application for Employment. (*Id.*, pp. 38-40).

After being terminated at The Villas, plaintiff's only other employment in the year 2006 was working at Quality Cleaners where he received one check for $214, and working two days for ManPower where he earned a total of $261.56. (Ex. 1, Ducree Dep., p. 23; Ex. 6). Plaintiff also did some self-employed work in 2006 cutting hair and raking yards, but he is not able to confirm what he earned during those times. (Ex. 1, Ducree Dep., pp. 24-27).

In the year 2007, plaintiff's only employment was at The Oar House in Pensacola, Florida, where he earned $3,729.69. (Ex. 7). Plaintiff had no other employment in 2007. (Ex. 1, Ducree Dep., p. 28).

Plaintiff voluntarily removed himself from the job market to care for his family. (Ex. 1, Ducree Dep., pp. 41-42, 90).

**Whether Defendants Are Entitled To Summary Judgment**

Plaintiff claims defendants discriminated against him on the basis of race when they terminated him from his employment. Plaintiff also claims defendants retaliated against him.

With regard to plaintiff's race discrimination claim, defendants do not dispute that plaintiff is a member of a protected class or that he suffered an adverse employment action. They argue, however, that plaintiff cannot establish either of the two remaining elements of a *prima facie* case: that he was qualified to do the job and that he was replaced by someone outside his protected class. Defendants further contend that even if plaintiff is able to establish the elements of a *prima facie* case, he fails to establish that their proffered reasons for terminating him were mere pretext and that the conduct was based on plaintiff's race. With regard to plaintiff's retaliation claim, defendants argue that plaintiff cannot establish a *prima facie* case

of retaliation, and even if he could, he cannot establish pretext.

    i.    <u>Race Discrimination Claim</u>

The court will first address plaintiff's race discrimination claim. Plaintiff may avoid summary judgment in one of two ways. He may rely on the traditional framework and use direct evidence to create a triable issue on whether he was terminated because of his race. Alternatively, plaintiff may use circumstantial evidence and rely on the *McDonnell Douglas* framework to create a triable issue. *See McDonnell Douglas Corp., supra*. Plaintiff has done neither.

Although it appears plaintiff may have initially attempted to set forth direct evidence of discrimination by alleging in his complaint that Mr. Williams "made a statement about [plaintiff's] gold teeth and tatoos [sic] and about [plaintiff] being a young black man," (doc. 1, p. 5), plaintiff has now abandoned that allegation and admitted that it was he, not Mr. Williams, who commented on his race and physical appearance. (Doc. 19, Ex. 1, Ducree Dep., p. 83.). Thus, the court does not consider plaintiff to have come forward with any direct evidence to create a triable issue on whether he was terminated because of his race.

Nor has plaintiff created a triable issue under the *McDonnell Douglas* framework. Defendants are correct that plaintiff cannot show that similarly situated employees of other races were treated more favorably. Liberally construing plaintiff's complaint, he neither claims nor alleges facts to suggest that similarly situated employees were treated better. Plaintiff admitted in his deposition that he does not know of any employee of The Villas who was late as frequently as he was. (Doc. 19, Ex. 1, Ducree Dep., p. 82). Defendants have submitted evidence that The Villas terminated 38 employees in 2006 for violation of the tardiness and absenteeism policy; 22 were African American, 14 were Caucasian, and 2 were Hispanic. (Ex. 11). Although plaintiff was given an opportunity to respond and to present evidence creating a triable issue on this element of the *prima facie* case,

**plaintiff failed to do so. As such, summary judgment is appropriate.[7]**

**Even assuming, without deciding, that plaintiff established a *prima facie* case, the defendants have stated legitimate, non-discriminatory reasons for their termination of plaintiff. The defendants have stated, and the undisputed evidence in the summary judgment record establishes, legitimate reasons for plaintiff's termination that had nothing to do with his race or appearance: (1) plaintiff violated company policy on numerous occasions by being tardy; (2) plaintiff was given four write-ups for being tardy, which warranted automatic termination, and (3) plaintiff violated company policy by leaving the facility grounds during his shift without clocking out. By not responding to defendants' statement of undisputed facts, plaintiff has admitted that these were the reasons he was terminated.**

**Even in the absence of such admission, plaintiff has failed to present evidence raising a genuine issue of fact for trial concerning whether "the legitimate reasons offered by the defendant . . . were a pretext for discrimination." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). A plaintiff must show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. Plaintiff must meet the proffered reason "head on and rebut it . . .[he] cannot succeed by simply quarreling with the wisdom of that reason." *Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (internal quotation marks omitted). Here, plaintiff has failed to present any evidence to dispute the write-ups or explain the multiple other dates he was late in violation of company policy. He admits that he has no reason to disagree with the time records of his arrival and leave times at work. (Doc. 19, Ex. 1, Ducree**

---

[7]**Because the court finds that plaintiff has not shown that similarly situated employees of other races were treated more favorably, the court need not consider the remaining element of the *prima facie* case – whether plaintiff was qualified. *See, e.g., EEOC v. Watkins Motor Lines, Inc.*, 463 F.3d 436, 443 (6th Cir. 2006).**

*Case No: 3:07cv452/MCR/MD*

Dep., pp. 55-56). Plaintiff has also failed to present evidence to dispute that he left the facility grounds during his shift without clocking out, in violation of company policy. In sum, plaintiff has failed to provide any evidence tending to show that the defendants' proffered reasons for termination were pretextual.

In light of all of the foregoing, summary judgment on plaintiff's racial discrimination claim is appropriate.

ii. <u>Retaliation Claim</u>

Summary judgment is also appropriate on plaintiff's retaliation claim. Liberally construing plaintiff's complaint, he neither claims nor alleges facts to suggest that he engaged in any protected activity (i.e., that he opposed any unlawful employment practice) prior to his termination. In his deposition, plaintiff admitted that he did not report any complaints of race discrimination prior to being terminated. (Doc. 19, Ex. 1, Ducree Dep., pp. 75-76, 83). His first mention of discrimination was when he spoke with Belie Williams the day he was terminated. (*Id*., pp. 75-76). Even at that time, plaintiff did not report prior discriminatory actions by defendants. He merely speculated to Mr. Williams that the reason he was being terminated "must be that I'm the only black man out here and my appearance. . . . Is it my teeth? Is it my tatts or my skin color?" (*Id.*, p. 83; Ex. 14, B. Williams Aff.). Plaintiff voicing this speculative inquiry after he was told he was being terminated does not create a triable issue on whether plaintiff engaged in protected activity or whether a protected activity caused him to be terminated. As plaintiff cannot establish a *prima facie* case of retaliation, summary judgment is appropriate.

Even assuming, without deciding, that plaintiff established a *prima facie* case, the defendants have stated legitimate, non-retaliatory reasons for terminating plaintiff's employment, as discussed above. Plaintiff has failed to present evidence raising a genuine issue of fact for trial concerning whether these reasons were a pretext for retaliatory conduct.

## CONCLUSION

Plaintiff cannot establish a *prima facie* case of race discrimination, and he further fails to provide sufficient evidence showing that defendants' termination of his employment was pretextual for an underlying discriminatory animus.  Similarly, plaintiff cannot establish a *prima facie* case of retaliation under Title VII, and even if he could, he fails to provide evidence showing that defendants' termination of his employment was pretextual for underlying retaliation.

Accordingly it is respectfully RECOMMENDED:

1.  That defendants' motion for summary judgment (doc. 18) be GRANTED.

2.  That the clerk be directed to enter judgment in favor of the defendants and close this file.

At Pensacola, Florida this 19th day of August, 2008.

/s/ *Miles Davis*
**MILES DAVIS
UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**